**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**GALLATIN POWER PARTNERS, LLC**
***Plaintiff*,**
**-against-**

**CITRINE SOLAR LLC AND GREENBACKER RENEWABLE ENERGY CORPORATION,**
***Defendants*.**

**Case No. 26-cv-2018**

**OPINION & ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Gallatin Power Partners LLC ("Gallatin") brings the instant suit against Defendants Citrine Solar LLC ("Citrine") and Greenbacker Renewable Energy Corporation ("Greenbacker"), alleging breach of contract and anticipatory repudiation claims in connection with the planned sale of a solar electric generation and battery energy storage project ("the Project"). Amended Complaint ("FAC"), ECF No. 8 ¶ 1. Pending before the Court is Defendant Citrine's motion to compel arbitration, ECF No. 29. After careful consideration, Defendant's motion is DENIED.

## BACKGROUND

The Court assumes the Parties' familiarity with the facts and procedural background of this case. The Court thereby focuses on the background as it relates to the instant motion.

### I. Factual Background

Plaintiff Gallatin Power Partners LLC is a renewable energy development firm that primarily develops solar and battery projects. FAC ¶ 20. Defendant Greenbacker Renewable Energy Corporation is an investment manager and independent power producer. *Id.* ¶ 21. Defendant Citrine Solar LLC is a limited liability company wholly owned by Greenbacker. *Id.* ¶ 14. Plaintiff and Defendants entered into a Membership Interest Purchase Agreement ("MIPA")

on March 20, 2023, in which Gallatin would sell 100% of its ownership interests in a proposed solar electric generation and battery energy storage project to Citrine, subject to certain conditions described in the MIPA, and with Greenbacker serving as the Buyer Guarantor. *Id.* ¶¶ 20, 25. The MIPA was signed by Plaintiff Gallatin and Defendant Citrine and stated that it "shall be governed by and construed in accordance with laws of the State of New York," and could be "terminated at any time prior to the Closing Date by the mutual written consent" of the Parties. MIPA, ECF No. 34 Exhibit A ¶¶ 7.1, 10.5.

NorthWestern Corporation ("NorthWestern") is a utility company that entered into a Power Purchase Agreement for the sale of the energy to be produced by the Project, with the terms for connecting the project to the power grid outlined in a Standard Large Generator Interconnection Agreement ("LGIA"). FAC ¶¶ 22-24. As part of the MIPA, Defendant Citrine provided a letter of credit ("LGIA Letter of Credit") to NorthWestern, providing a financial guaranty on behalf of the Project. Defendant's Memorandum in Support of Motion to Compel Arbitration ("Deft. Sup. Memo."), ECF No. 29 at 3.

Although Parties disagree on the specifics, all concur that there were an increasing number of disputes related to their obligations under the MIPA starting in 2025, particularly in the fall of that year. *Id.* at 3; FAC ¶¶ 37-49. These disagreements led the Parties to begin contemplating a potential resolution of their disputes through a settlement and termination of the MIPA. Deft. Sup. Memo., at 3; Plaintiff's Memorandum in Opposition to Motion to Compel Arbitration ("Pl. Opp. Memo."), ECF No. 31 at 7. In furtherance of these settlement discussions, Plaintiff communicated with NorthWestern between January 5, 2026 and January 15, 2026 to inquire about the potential costs at risk to be drawn from the LGIA Letter of Credit. Deft. Sup. Memo., at 4.

Over the course of these negotiations, Defendant Citrine sent three drafts of a potential settlement agreement by email on December 23, 2025, January 21, 2026, and January 28, 2026. Pl. Opp. Memo., at 9. Within the text in the body of Defendant Citrine's January 28, 2026 email was the question "[c]an you please let me know once you've had a chance to review the attached, and your intended timeline for execution?" *Id.* On January 30, 2026, Plaintiff replied to Defendant Citrine's January 28, 2026 email, sending a redlined version of the most recent draft of the proposed settlement agreement, along with the note, "[p]lease find attached our comments." *Id.* at 10. On February 2, 2026, Defendant Citrine accepted Plaintiff's revisions, signed the document ("the Settlement Agreement"), and emailed it back to Plaintiff with the note "[w]e're good with these edits. Can Orrick please prepare an execution copy? Attached is our signature page. Will you be reaching out to [NorthWestern] today with the [LGIA Letter of Credit] cancellation letter and request to withdraw [Project] so we can initiate the [LGIA Letter of Credit] return?" *Id.*, Exh. 7.

The language of the Settlement Agreement included, among other things, the release of any claims the Parties had against one another related to the MIPA, termination of the MIPA, an integration clause, multiple references to its execution, and a requirement that the Parties arbitrate any potential disputes. Settlement Agreement, ECF No. 29, Exh. 1. The Settlement Agreement also stated that the MIPA would be terminated upon Plaintiff's receipt of a termination payment from Defendant Citrine, which was to be paid after Plaintiff facilitated the release of the LGIA Letter of Credit from NorthWestern. *Id.* ¶ 2.

Plaintiff neither signed the Settlement Agreement nor responded to Defendant Citrine's February 2, 2026 email. Pl. Opp. Memo., at 10. Instead, Plaintiff worked to close the sale under the MIPA, informing Defendant Citrine of this on February 24, 2026. Deft. Sup. Memo., at 6-7.

Defendant Citrine expressed dismay at this revelation, indicating that it believed the Settlement Agreement to be binding and enforceable. *Id.* at 7. Following Defendant Citrine's response to Plaintiff's February 24, 2026 attempt to close under the MIPA, Plaintiff requested that NorthWestern terminate the LGIA, and the LGIA Line of Credit was confirmed to be released on March 10, 2026. Schumaker Declaration, ECF No. 29 Attachment 1 ¶¶ 31-38.

## II. Procedural History

On March 11, 2026, Plaintiff filed a complaint seeking damages for breach of contract and anticipatory repudiation under the MIPA. Pl. Opp. Memo., at 11. On March 31, 2026, Plaintiff amended their complaint. ECF No. 8. On April 1, 2026, Plaintiff filed for emergency relief in the form of a temporary restraining order ("TRO"). ECF No. 11. On April 3, 2026, the Court held a telephonic conference in which it denied the request for a TRO and set a briefing schedule for the motion to compel arbitration. ECF No. 24. Defendant Citrine filed its motion on April 24, 2026. ECF No. 29. Plaintiff filed its opposition on May 15, 2026. ECF No. 31. Defendant Citrine filed its reply on May 21, 2026. ECF No. 32.

On June 8, 2026, the Court ordered Plaintiff to file a copy of the MIPA. ECF No. 33. On June 9, 2026, the Court ordered supplemental briefing on how the language in the MIPA affects the Court's analysis of whether the termination agreement needed to be signed. ECF No. 35. Defendants and Plaintiff stated their positions on June 12, 2026 and June 16, 2026, respectively. ECF Nos. 36, 37. The Court then ordered Defendants to reply to Plaintiff. ECF No. 38. Defendants replied on June 25, 2026. ECF No. 39.

## LEGAL STANDARD

"The threshold question facing any court considering a motion to compel arbitration is . . . whether the parties have indeed agreed to arbitrate." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). "Only if the court concludes an agreement to arbitrate exists does it

determine . . . the scope of the agreement to arbitrate." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022) (citing *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)). "The question of whether the parties have agreed to arbitrate, i.e., the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)). Defendant bears the initial burden of proving that such a valid arbitration agreement exists. *See Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 115 (2d Cir. 2025) ("The party seeking arbitration bears the initial burden of demonstrating that an agreement to arbitrate exists.").

To resolve whether Defendant has met this burden, "courts apply a 'standard similar to that applicable for a motion for summary judgment,' . . . and must 'draw all reasonable inferences in favor of the non-moving party.'" *Id.* at 115 (quoting *Nicosia*, 834 F.3d at 229). If "there is [a genuine] issue of fact as to the making of the agreement for arbitration, then ... a trial is necessary." *Zachman*, 49 F.4th at 101; *see* 9 U.S.C. § 4 ("If the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof.").

"The threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles." *Nicosia*, 834 F.3d at 229. Both the Settlement Agreement and MIPA have clauses stating that they are governed by New York State law. Settlement Agreement, ECF No. 29 Exh. 1 ¶ 13; MIPA, ECF No. 34 Exh. A ¶ 10.5. "The principles of New York law and federal common law regarding the enforceability of settlement agreements are 'materially indistinguishable,' such that the Court may apply the two sets of laws 'interchangeably.'" *Grgurev v. Licul*, No. 1:15-CV-9805-GHW, 2016 WL 6652741, at *3 n.1 (S.D.N.Y. Nov. 10, 2016) (quoting *Powell v. Omnicom*, 497 F.3d 124, 129 n.1 (2d Cir. 2007)).

"Under New York law, applicable here, the proponent of a contract has the burden of proving the existence of a binding contract by a preponderance of the evidence." *Xie v. Caruso, Spillane, Leighton, Contrastano, Savino & Mollar, P.C.*, 632 F. Supp. 3d 262, 267 (S.D.N.Y. 2022).

**DISCUSSION**

The dispositive question in this case is whether Plaintiff assented to being bound by the Settlement Agreement, rendering it enforceable. If so, Defendant Citrine's motion to compel arbitration must be granted under the arbitration clause of that contract; if not, the motion must fail because the MIPA provides for litigation as the method of dispute resolution. Settlement Agreement, ECF No. 29 Exh. 1 ¶ 13; MIPA, ECF No. 34 Exh. A ¶ 9.1. "New York follows the generally accepted rule that when parties negotiating a proposed contract express an intent not to be bound until their negotiations have culminated in the execution of a formal contract, they cannot be bound until that event has occurred." *Cabrera Cap. Markets, LLC v. Further Lane Sec., L.P.*, No. 12 CIV. 2898 DAB, 2013 WL 5462373, at *4 (S.D.N.Y. Sept. 25, 2013) (quoting *Jim Boulton Corp. v. William Wriqley Jr. Co.*, 902 F .2d 1074, 1081 (2d Cir.1990)). In determining whether parties intended to be bound prior to formally executing a written agreement, the four *Winston* factors are considered:

(a) whether there has been an express reservation of the right not to be bound in the absence of a writing; (b) whether there has been partial performance of the contract; (c) whether all of the terms of the alleged contract have been agreed upon; and (d) whether the agreement at issue is the type of contract that is usually committed to writing.

*Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir.1985).

"No single factor is dispositive, but the first is 'the most important.'" *Cabrera*, 2013 WL 5462373 at *5 (quoting *Adiustrite Svs. v. GAB Bus. Servs.*, 145 F.3d 543, 549 (2d Cir.1998)). "In applying these *Winston* factors, 'a strong presumption [exists] against finding binding obligations in agreements which include open terms, call for future approvals, and expressly anticipate

future preparation and execution of contract documents.'" *Cabrera*, 2013 WL 5462373 at *5 (quoting *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir. 1989)). For the following reasons, the Court finds that Defendant Citrine has not satisfied its burden of proving by a preponderance of the evidence that Plaintiff intended to be bound in the absence of a fully executed document.

**a. Plaintiff implicitly reserved the right not to be bound absent a signed writing through contractual provisions and related communication.**

Although the Settlement Agreement does not contain an express reservation of the right not to be bound absent a signed writing, the text of the document and the related negotiations indicate Plaintiff's intention not to be bound until the agreement was fully executed. *See O'Connor-Goun v. Weill Cornell Med. Coll. of Cornell Univ.*, 956 F. Supp. 2d 549, 552–53 (S.D.N.Y. 2013); *see also Winston*, 777 F.2d at 81 (stating that although there was no express reservation of the right not to be bound, "language in the correspondence does reveal such an intent").

The Settlement Agreement includes a merger clause stating that it "contains the entire understanding among the Parties," and that the "[a]greement may not be amended or modified except in writing signed by all Parties hereto." Settlement Agreement, ECF No. 29 Exh. 1 ¶ 12. "It would be passing strange for the parties to agree that any binding modification must be reduced to writing and fully executed if they did not also understand that the initial agreement itself had similarly to be fully executed in order to become enforceable. For that reason, '[t]he presence of such a merger clause is persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement.'" *O'Connor*-Goun, 956 F. Supp. 2d at 553 (quoting *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 324 (2d Cir. 1997)).

Moreover, there are multiple references to execution and signatures within the Settlement Agreement. *See* Settlement Agreement, ECF No. 29 Exh. 1 ¶¶ 15-17. Such references demonstrate an intent not to be bound absent a signed writing. *See Hernandez v. Fresh Diet Inc.*, No. 1:12-CV-4339, 2017 WL 4838328, at *3 (S.D.N.Y. Oct. 25, 2017), *see also Nieves v. Community Choice Health Plan of Westchester, Inc.*, No. 08 Civ. 0321, 2011 WL 5533328, at *4 (S.D.N.Y. Aug. 31, 2011) (finding language such as "[t]his Agreement may be executed in two (2) or more counterparts" to indicate intent by parties not to be bound before execution).

Additional persuasive evidence of this implied reservation is provided by the blank signature blocks, with accompanying incomplete signature dates. *See Centrans Truck Lines, LLC v. Orient Express Container Co Ltd.*, No. 1:22-CV-05477 (MKV), 2023 WL 5390220, at *3 (S.D.N.Y. Aug. 21, 2023); *see also Spencer Trask Software & Info. Servs. LLC v. RPost Int'l*, 383 F. Supp. 2d 428, 442 (S.D.N.Y. 2003) ("blank signature lines with an open agreement date" indicated "that the parties did not evince an intent to be bound prior to execution"); Settlement Agreement, ECF No. 29 Exh. 1 at 6. When taken together, these clauses of the Settlement Agreement provide a clear indication that Plaintiff did not intend to be bound absent a signed writing.

Turning to the broader context of the settlement negotiations, the email communication between Parties suggests Plaintiff did not intend to be bound by sending edits to the proposed Settlement Agreement. Plaintiff sent the revised document in a January 30, 2026 email which read merely "Hi Jacquline, Please find attached our comments. Thanks, Adam." ECF No. 29, Exh. 4. Rather than referring to the attached draft as a final version or an executable copy, Plaintiff instead mentioned "comments." This language provides no indication that Plaintiff viewed the revised draft as a binding contract. Plaintiff's email was in response to a January 28,

2026 email from Defendant, which inquired about Plaintiff's "intended timeline for execution." *Id.* Thus, the surrounding communication provides yet further evidence that the parties were contemplating formal execution as a requirement to be bound by any draft. Plaintiff provided no such intent to be bound by sharing one revised draft in a series of potential agreements.

Considering the plain language of the Settlement Agreement, in conjunction with the related email communication, the first and most important *Winston* factor weighs heavily against enforcing the Settlement Agreement.

**b. <u>Parties' actions do not clearly indicate partial performance under the Settlement Agreement.</u>**

Turning to the second *Winston* factor, Plaintiff's actions relating to its obligations under the Settlement Agreement present a more complex inquiry into partial performance. *Winston* points to partial performance as an objective indicator of a party's intent to be bound. *See Winston*, 777 F.2d at 80 ("[t]o discern that intent a court must look to 'the words and deeds [of the parties] which constitute objective signs in a given set of circumstances.'") (quoting *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984)). The Settlement Agreement called for Plaintiff to obtain the release of the LGIA Line of Credit from NorthWestern and, following that release, for Defendant to pay a termination payment to Plaintiff. *See* Settlement Agreement, ECF No. 29 Exh. 1 ¶ 2. Plaintiff denies working to have the LGIA Letter of Credit released following the production of the January 30, 2026 revised draft and provided no affirmative indication to Defendant that such work was being done after that date. *See* Schumaker Decl., ECF No. 29 Attachment 1 ¶¶ 31-34.

However, Plaintiff did communicate with NorthWestern regarding the LGIA Line of Credit between January 5 and January 15, 2026, as part of "ongoing settlement negotiations."

Schumaker Decl., ECF No. 29 Attachment 1 ¶ 25. Notably, Plaintiff did eventually obtain the release of the LGIA Line of Credit, although Plaintiff claims this was not done in furtherance of the Settlement Agreement, but rather “to mitigate its damages under the LGIA.” Opp. Br. at 20.

Furthermore, in the January 30, 2026 revised draft of the Settlement Agreement, Plaintiff chose not to edit the language stating that it “has requested from NorthWestern a release and/or return of the LGIA Letter of Credit.” Settlement Agreement, ECF No. 29 Exh. 1 at 1. This language could reasonably be construed to suggest Plaintiff was already performing its obligation under the Settlement Agreement. Plaintiff points to the fact that Defendant has not paid the termination payment as evidence that Parties were not performing under the Settlement Agreement. *See* Opp. Br. at 20-21. However, this payment was to occur only following the release of the LGIA Line of Credit, which Defendant was not aware had happened before filing its motion. *See* Fedida Declaration II, ECF No. 32 Attachment 1 ¶¶ 13-14.

In Plaintiff’s favor, Defendant’s February 2, 2026 email inquired whether Plaintiff would “be reaching out to [NorthWestern] today with the [LGIA Letter of Credit] cancellation letter and request to withdraw.” ECF No. 31, Exh. 7. This email indicates that even following Plaintiff’s January 30, 2026 revisions to the Settlement Agreement, Defendant was not under the belief that Plaintiff had requested a withdrawal of the LGIA Line of Credit as part of the proposed Settlement Agreement.

In summary, Plaintiff’s expressed words and deeds do provide some basis to infer partial performance. Despite this, when resolving all reasonable doubts and inferences in Plaintiff’s favor, Defendant has not clearly demonstrated partial performance. Thus, this factor does not weigh heavily in support of either party. In any event, the second factor has “the least sway with the court.” *Xie*, 632 F. Supp. 3d at 268.

**c. Defendant's acceptance of Plaintiff's edits does not constitute agreement on all terms.**

Turning to the third factor, "the burden of establishing agreement as to all of the material terms of a contract is on a party seeking to enforce that contract." *Klein v. AT&T Corp.*, No. 23 CIV. 11038 (DEH), 2024 WL 2959166, at *5 (S.D.N.Y. June 10, 2024) (quoting *Sprint Commc'ns Co. L.P. v. Jasco Trading, Inc.*, 5 F. Supp. 3d 323, 338 (E.D.N.Y. 2014)). Defendant's acceptance of Plaintiff's relatively minor edits suggests that the Parties may have been close to coming to a full agreement. However, "[i]t is not for the court to determine retrospectively that at some point in the evolution of a formal document that the changes being discussed became so 'minor' or 'technical' that the contract was binding despite the parties' unwillingness to have it executed and delivered. For the court to do so would deprive the parties of their right to enter into only the exact contract they desired." *Winston*, 777 F.2d at 83.

As previously discussed, the language of Plaintiff's January 30, 2026 email that contained the suggested edits did not provide a clear indication that a complete agreement had been reached. *See* ECF No. 29, Exh. 4. Construing reasonable doubts and inferences in favor of Plaintiff, acceptance of edits to one in a series of contemplated drafts does not demonstrate agreement on all terms. Therefore, this factor weighs minorly in favor of Plaintiff.

**d. The agreement was sufficiently complex to usually require a fully executed written document.**

The final factor considers "whether the agreement at issue is the type of contract that is usually committed to writing." *Winston*, 777 F.2d at 80. The Settlement Agreement is the type of contract usually committed to writing, and it was indeed written. Beyond that, the Settlement Agreement is the type of contract that is usually formally executed, and therefore this factor also weighs in Plaintiff's favor. When evaluating this factor, courts consider "(1) the amount of money at issue, (2) whether the terms of agreement will carry into perpetuity, and (3) the length

and complexity of the agreement itself." *Grgurev*, 2016 WL 6652741 at *7 (quoting *Conway v. Brooklyn Union Gas Co.*, 236 F. Supp. 2d 241, 251 (S.D.N.Y. 2002)).

Here, the six-page Settlement Agreement "releases, waives, and forever discharges" the Parties from any claims related to the MIPA in perpetuity. Settlement Agreement, ECF No. 29 Exh. 1 ¶¶ 5-6. The termination payment would be up to $1,100,000.00. *Id.* ¶ 2. The Settlement Agreement requires confidentiality and non-disparagement. *Id.* ¶¶ 10-11. "In situations such as these, 'the requirement that the agreement be in writing and formally executed simply cannot be a surprise to anyone.'" *Klein*, 2024 WL 2959166 at *5 (quoting *Ciaramella*, 131 F.3d at 326); *see also Winston,* 777 F.2d at 83 (finding four-page settlement agreement that contained obligations that would last over several years sufficiently complex to satisfy factor). Given its complexity, one would expect the Settlement Agreement to be formally signed and executed before being rendered enforceable. Thus, the final factor provides yet more support for Plaintiff that the agreement is unenforceable.

**CONCLUSION**

For the reasons set forth by the Court, Defendant's motion to compel arbitration of claims is **DENIED**.

**SO ORDERED.**

**Dated: July 23, 2026**
**New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**